IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TAMI J. MATTHEWS,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>HARTFORD LIFE & ACCIDENT INSURANCE COMPANY,<br><br>　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:14-CV-94 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Motions for Summary Judgment by Plaintiff Tami J. Matthews ("Ms. Matthews") and Defendant Hartford Life & Accident Insurance Company ("Hartford"). For the reasons discussed more fully below, the Court will grant Defendant's Motion and deny Plaintiff's Motion.

I. INTRODUCTION

Ms. Matthews is a former employee of Intermountain Health Care, Inc. ("IHC"), and a participant in the Group Long Term Disability Plan for Employees of Intermountain Health Care, Inc. (the "Plan"). Hartford is the claim administrator responsible for the determination of claims for long term disability ("LTD") benefits under the Plan.[1] The Plan is funded by a Hartford insurance policy held by IHC.[2]

A participant in the Plan seeking LTD benefits must submit "Proof of Loss" to Hartford.[3]

---

[1] Matthews Rec. at 30.

[2] *Id.*

[3] *Id.* at 15–16.

The "Proof of Loss" includes, among other things, documentation of the cause of the disability and "any and all medical information."[4] The Plan defines disability or disabled as:

> mean[ing] You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation for the 12 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) After that Any Occupation.[5]

Ms. Matthews's duties were essentially that of an IT specialist, although she, on occasion, did perform nursing duties. Ms. Matthews stopped working at IHC on June 28, 2012, to undergo rotator cuff surgery and expected to return to work within four months of surgery.[6] On August 16, 2012, Ms. Matthews underwent umbilical hernia repair surgery.[7] Ms. Matthews experienced a complication from an infection related to this surgery and reported daily headaches after the surgery.[8]

Ms. Matthews submitted a claim for LTD benefits under the Plan based on the open wound from hernia surgery, neck pain, hand and nerve pain, and headaches.[9] On January 4, 2013, Hartford issued its initial determination not to grant LTD benefits based on its belief that Ms. Matthews was "able to perform all the physical demands" of her sedentary occupation.[10]

On appeal, Hartford assigned Ms. Matthews's file to independent medical consultants with Managing Care Managing Claims, LLC ("MCMC") for review. On June 13, 2012,

---

[4] *Id.* at 15.
[5] *Id.* at 19.
[6] *Id.* at 117.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 116.
[10] *Id.* at 149–50.

Hartford issued its appeal determination denying Ms. Matthews's claim and concluding that "the weight of the evidence does not substantiate that [Ms. Matthews's] conditions, alone or in combination, are of such severity that [Ms. Matthews] was rendered Disabled and prevented from performing the essential duties of her occupation after [June 26, 2012]."[11]

Hartford reopened Ms. Matthews's appeal on June 23, 2013, to review additional medical information and address concerns of Ms. Matthews's physicians.[12] Hartford again referred Ms. Matthews's file and materials to MCMC for additional review.[13] After receiving the review from MCMC, Hartford upheld its appeal decision that the medical evidence did not support a finding of disability as of the LTD benefit start date of June 26, 2012.[14]

Ms. Matthews contends that Hartford improperly denied her claims for LTD benefits and seeks relief under the Employee Retirement Income Security Act ("ERISA").

## II. LEGAL STANDARD

A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[15] If "the plan gives an administrator discretionary authority to determine eligibility for benefits or to construe its terms, [courts]

---

[11] *Id.* at 133.

[12] *Id.* at 64–65.

[13] *Id.* at 201–02.

[14] *Id.* at 124.

[15] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[16]

In this case, the Plan designated Hartford as the plan administrator and provides Hartford with discretion to determine eligibility for benefits and to interpret the terms of the policy.[17] Under these circumstances, the Court applies an arbitrary-and-capricious review.

Plaintiff argues that Hartford is not entitled to a fully deferential arbitrary-and-capricious review because a conflict of interest exists and there are procedural errors pertaining to Ms. Matthews's claim.

A conflict of interest exists where "a plan administrator both evaluates claims for benefits and pays benefits claims."[18]  This conflict can exist even when a third-party evaluates claims, such as when "the plan administrator is not the employer itself but rather a professional insurance company."[19]  "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion."[20]

The Tenth Circuit has "crafted a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given

---

[16] *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (internal quotation marks and citation omitted).

[17] Matthews Rec. at 18–19.

[18] *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).

[19] *Id.* at 114.

[20] *Firestone*, 489 U.S. at 115.

in proportion to the seriousness of the conflict."[21]  Consequently, a conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy."[22]

As part of the Court's arbitrary-and-capricious review, Plaintiff argues that the circumstances in this case require the Court to give significant weight to the conflict of interest.

Plaintiff argues that,

1) Hartford unreasonably required objective evidence when the Plan required no such evidence, and that it failed to explain what additional material would be sufficient to support her claim, 2) failed to examine [Ms. Matthews] despite clearly needing more information to support its decision about her condition, 3) dismissed the opinions of [Ms. Matthews's] treating physicians in favor of those who had never examined her in person, 4) misrepresented the statements of [Ms. Matthews's] physicians and then failed to explain why its interpretations of those statements were superior to [Ms. Matthews's] physicians, 5) failed to consider her actual job duties, and 6) failed to provide a "scientific or clinical judgment" for its medical determinations.[23]

All of Plaintiff's arguments that the conflict of interest played a role in Hartford's claim determination go to the merits of Plaintiff's ERISA claim—they do not necessarily demonstrate what influence, if any, the alleged conflict of interest played in Hartford's determination of Ms. Matthews's claim.  Plaintiff does not point to any evidence or circumstances, other than the fact that Hartford denied Ms. Matthews's claim, demonstrating that the conflict played a role in Hartford's determination.  Furthermore, during the review process, Hartford mitigated the

---

[21] *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citations, internal quotation marks, and alterations omitted).

[22] *Firestone*, 489 U.S. at 117.

[23] Docket No. 22, at 5.

potential for undue influence of the conflict of interest by retaining independent physicians to review Ms. Matthews's record and provide a recommendation. Therefore, the Court will apply an arbitrary-and-capricious review of Hartford's determination not to approve LTD benefits to Ms. Matthews and give little weight to the conflict-of-interest factor.

## III.  DISCUSSION

"Under the arbitrary-and-capricious standard, our review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[24]

> In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis. In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, [the Court's] review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end.
> A lack of substantial evidence often indicates an arbitrary and capricious decision. Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole.[25]

With respect to the conflict-of-interest factor, Plaintiff argues that the Court should give significant weight to the conflict of interest created by Hartford's dual role as the LTD claim administrator and the party responsible for paying LTD benefits because of its insurance contract with IHC. As previously discussed, the Court will give little weight to this factor because there is no evidence that Hartford's dual role influenced its claim determination and Hartford mitigated the risk of undue influence by retaining third-party physicians to review Ms.

---

[24] *Eugene v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (internal quotation marks and citation omitted).

[25] *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (internal quotation marks and citations omitted).

Matthews's file.  Thus, on the Tenth Circuit's sliding scale, the court will not decrease the deference given to Hartford under the arbitrary-and-capricious standard.

Plaintiff argues that Hartford's claim determination was arbitrary and capricious because Hartford did not give appropriate credit to the opinions of Ms. Matthews's treating physicians,[26] misapplied the definition of disability under the Plan,[27] required objective evidence of the disability when no such requirement is in the Plan,[28] did not apply a reasoned and principled process in its review,[29] did not have substantial evidence to support its denial of Ms. Matthews's LTD benefits claim,[30] unreasonably relied on the opinions of reviewing physicians,[31] the claim reviewers did not provide a rational explanation or analysis of Ms. Matthews's disability claim,[32] and Hartford did not reasonably consider alleged inaccuracies in the reports of the reviewing physicians.[33]  The Court will discuss each of these arguments in turn.

First, Plaintiff argues that Hartford did not give appropriate credit to the opinions of Ms. Matthews's treating physicians.  "ERISA does not require plan administrators to 'accord special deference to the opinions of treating physicians,' nor does it place 'a heightened burden of explanation on administrators when they reject a treating physician's opinion.'"[34]  However,

---

[26] Docket No. 18, at 18.

[27] *Id.* at 20.

[28] Docket No. 22, at 7.

[29] *Id.* at 10.

[30] *Id.* at 12.

[31] *Id.* at 15.

[32] Docket No. 26, at 6.

[33] *Id.* at 9.

[34] *Rasenack v. AIG Life Ins. Co.*, 582 F.3d 1311, 1325 (10th Cir. 2009) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003)).

"'[p]lan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'"[35]

In this case, Plaintiff claims that MCMC's reviewers, Dr. Stephen Selkirk, M.D., and Dr. Nick Defilippis, Ph.D., arbitrarily refused to give the opinions of Ms. Matthews's physicians any consideration at all. To the contrary, the administrative record demonstrates that Dr. Selkrik and Dr. Defilippis gave Ms. Matthews's treating physicians' opinions significant consideration.[36] Therefore, the Court must reject this argument.

Second, Plaintiff claims Hartford misapplied the definition of disability under the Plan by failing to consider Ms. Matthews's essential duties and focusing only on her physical ability to perform sedentary work. Plaintiff argues that this is an abuse of discretion. Plaintiff also argues that because Hartford did not recognize Ms. Matthews's cognitive impairments, it could not have reasonably considered her ability to perform the mental or analytical components of her job.[37]

The administrative record demonstrates that Hartford considered both the physical and mental requirements of Ms. Matthews's work. At various points in the review process, Hartford sought to understand Ms. Matthews's job requirements.[38] Hartford requested that the reviewing physicians, a neurologist and neuropsychologist, consider Ms. Matthews's reported diagnoses of headaches and cognitive functional impairment to determine the impact of the diagnoses on her capacity to perform her work activities.[39] Hartford concluded that there was not enough

---

[35] *Id.* (quoting *Nord*, 538 U.S. at 834).

[36] Matthews Rec. at 179–82; 185–88; 299–305; 307–12.

[37] Docket No. 26, at 5.

[38] Matthews Rec. 106; 110–11; 116; 488–94.

[39] *Id.* at 318–19.

evidence to substantiate the claim that Ms. Matthews's conditions were so severe that she was unable to perform the essential duties of her occupation.[40] Therefore, Hartford found that she was not disabled as defined by the Plan.[41]

In its appeal determination letter, Hartford stated that Ms. Matthews's job required her to "[provide] analysis, design, configuration, testing, implementation and support (technical and functional) of administrative, financial or clinical information systems."[42] After considering "the impact of the findings have as far as [Ms. Matthews's] ability to function on a daily basis and how it would have prevented [her] from performing" her job duties, Hartford determined that the weight of the evidence did not substantiate Ms. Matthews's disability claim.[43]

Plaintiff's argument is that Hartford acted arbitrarily and capriciously because it only considered Ms. Matthews's ability to perform the physical demands of her job without regard to the cognitive demands. The record demonstrates the contrary. Hartford sought to understand and did understand Ms. Matthews's job duties, both physical and cognitive. Hartford asked the independent reviewing physicians to consider what affect, if any, Ms. Matthews's symptoms would have on her ability to conduct her job duties, both physical and cognitive. Considering this, Hartford found that the evidence did not support the claim that Ms. Matthews was unable to perform those duties. Therefore, the Court finds that Hartford did not act arbitrarily and capriciously and did not misapply the terms of the Plan.

---

[40] *Id.* at 130–33.

[41] *Id.*

[42] *Id.* at 129.

[43] *Id.* at 129–30.

Third, Plaintiff claims Hartford acted arbitrarily and capriciously by requiring objective evidence of the disability when no such requirement is in the Plan. Under ERISA, "the imposition of new conditions that do not appear on the face of a plan constitutes arbitrary and capricious conduct."[44] Plaintiff claims that Hartford dismissed Ms. Matthews's complaints as merely subjective evidence of her condition.

The administrative record demonstrates Hartford considered, at least to some extent, Ms. Matthews's subjective complaints.[45] Hartford was not required to give Ms. Matthews's subjective complaints the same consideration as objective evidence.[46] Furthermore, it is not arbitrary and capricious to require objective evidence or clinical findings to support a finding that Ms. Matthews's condition impairs her to such a degree that she cannot perform the physical and cognitive demands of her occupation.[47] Therefore, the Court finds that Hartford did not act arbitrarily and capriciously and did not impose any requirements on Ms. Matthews to demonstrate her disability other than those required by the Plan.

Fourth, Plaintiff argues Hartford acted arbitrarily and capriciously when it did not apply a reasoned and principled process in its review. Plaintiff essentially argues that Hartford's process was unreasonable and unprincipled because Hartford did not consider Ms. Matthews's cognitive

---

[44] *Garratt v. Walker*, 164 F.3d 1249, 1255 (10th Cir. 1998).

[45] Matthews Rec. at 52–54; 56–60; 66–69; 73–76; 81–84; 87–89; 89–94; 95–98; 100–03; 106–09; 110–12; 114–16; 130; 180–81.

[46] *Rizzi v. Hartford Life & Acc. Ins. Co.*, 383 F. App'x 738, 752–53 (10th Cir. 2010) (unpublished); *Flanagan v. Metropolitan Life Ins. Co.*, 251 F. App'x 484, 489 (10th Cir. 2007) (unpublished).

[47] *Meraou v. Williams Co. Long Term Disability Plan*, 221 F. App'x 696 (10th Cir. 2007) (unpublished).

job duties.[48] For the reasons discussed above, the Court finds that Hartford did consider Ms. Matthews's job duties, both physical and cognitive, when making its claim determination.

Fifth, Plaintiff argues Hartford did not have substantial evidence to support its denial of Ms. Matthews's LTD benefits claim. To support her argument, Plaintiff reiterates that she believes Hartford arbitrarily and capriciously disregarded her treating physicians' opinions without conducting an examination of Ms. Matthews or requesting additional testing be performed to determine her cognitive capabilities.

The Court has already addressed Plaintiff's claim that Hartford arbitrarily and capriciously disregarded Ms. Matthews's treating physicians' opinions. Plaintiff relies on *Rasenack v. AIG Life Insurance Co.*, to support her argument that Hartford should have conducted its own examination or requested additional testing of her cognitive abilities.[49] In *Rasenack*, what the Tenth Circuit found unreasonable was that the claims administrator focused on only information supporting its determination without conducting a full investigation into the evidence provided by the plaintiff.[50] In this case, there is substantial evidence that Hartford and its independent reviewers considered all the medical evidence submitted by Plaintiff.[51] Simply because Hartford gave more weight to the reviewing physicians' opinions without conducting an in-person examination of Ms. Matthews does not demonstrate that Hartford acted arbitrarily and

---

[48] Docket No. 22, at 10–12.

[49] Docket No. 18, at 15.

[50] *Rasenack*, 582 F.3d at 1326–27 ("Given AIG's failure to perform a more thorough investigation and to credit the evidence submitted by [plaintiff] . . . we are not persuaded the . . . conclusions of the reviewing physicians provide a sufficient grounds for AIG's denial of [plaintiff's] claim for benefits.").

[51] Matthews Rec. at 128–33; 179–82; 185–88; 299–305; 307–12.

11

capriciously.[52] As will be discussed below, the Court finds that there is substantial evidence to support Hartford's determination.

Sixth, Plaintiff contends that Hartford arbitrarily and capriciously relied on the opinions of reviewing physicians. Again, the Court has already addressed this issue. Hartford gave reasonable consideration to all the medical evidence presented, including subjective evidence of Ms. Matthews's cognitive impairments as well as the opinions of Ms. Matthews's treating physicians.

Seventh, Plaintiff contends the claim reviewers did not provide a rational explanation or analysis of Ms. Matthews's disability claim. Plaintiff claims that Hartford should have conducted its own examination of Ms. Matthews's cognitive ability, including cognitive effort, before making the conclusion that she was not disabled.[53] Plaintiff also argues that the reviewing physicians' explanations of Ms. Matthews's cognitive testing results are unsatisfactory.[54]

The Court notes that the reports Dr. Defilippis and Dr. Selkirk, the reviewing physicians, are thorough, detailed, and reasoned.[55] The Court has already addressed the argument that Hartford should have conducted its own examination of the claimant. Plaintiff's argument that the reviewing physicians' explanations are unsatisfactory does not demonstrate that Hartford acted arbitrarily and capriciously. "[T]he [claim administrator's] decision will be upheld so long as it is predicated on a reasoned basis. In fact, there is no requirement that the basis relied upon

---

[52] *Nord*, 538 U.S. at 834.

[53] Docket No. 26, at 6.

[54] *Id.* at 6–7.

[55] Matthews Rec. at 179–82; 185–88; 299–305; 307–12.

be the only logical one or even the superlative one," all ERISA requires is that the "decision resides somewhere on a continuum of reasonableness—even if on the low end."[56] Simply because Plaintiff does not agree with the reviewing physicians' explanation of Ms. Matthews's cognitive abilities does not mean Hartford acted arbitrarily and capriciously. Given the evidence in the administrative record, Dr. Defilippis and Dr. Selkirk came to a reasonable conclusion, which Hartford reasonably relied upon.

Lastly, Plaintiff argues Hartford acted arbitrarily and capriciously by not properly addressing alleged inaccuracies in the reports of the reviewing physicians. After Hartford issued its appeal determination, it reopened Ms. Matthews's claim to address the concerns of her treating physicians about the determination. Ms. Matthews's physicians believed that the reviewing physicians mischaracterized some of their statements. The reviewing physicians addressed the concerns in separate addendums to their original reports. After reviewing the letters from Ms. Matthews's attending physicians as well as the addendums of the reviewing physicians, the Court finds that the reviewing physicians appropriately addressed Ms. Matthews's physicians' concerns. While there may be disagreement between the two groups of physicians, such disagreement is immaterial to Hartford's claim determination.

The Court finds that Hartford based its claim determination on substantial evidence residing on the continuum of reasonableness—even if on the low end. Evidence within the administrative record supports Hartford's determination. Dr. Defilippis showed that Ms. Matthews's reported concentration and processing weakness could be attributable to her dyslexia

---

[56] *Adamson*, 455 F.3d at 1212.

and that she was not impaired to the point of being disabled.[57] Dr. Selkirk found that Ms. Matthews's cognitive testing was "consistent with someone who could perform at a very high level intellectually."[58] Dr. Selkirk and Dr. Defilippis showed that, considering Ms. Matthews's complaints and the neuropsychological evaluation, she was capable of working. Based on the reports of Dr. Selkrik and Dr. Defilippis, Hartford had a reasonable basis for its decision. "[T]here is no requirement that the basis relied upon be the only logical one or even the superlative one" all the law requires is that Hartford based its decision on substantial evidence, which is more than a scintilla but less than a preponderance.

For the reasons discussed herein, the Court finds that Hartford did not act arbitrarily and capriciously when it denied Ms. Matthews's LTD benefits claim because Hartford based its determination on substantial evidence within the administrative record.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED. It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 18) is DENIED.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff, and close this case forthwith.

DATED this 12th day of June, 2015.

BY THE COURT:

*[signature]*

---

[57] Matthews Rec. at 303–04.

[58] *Id.* at 310, 312.

_____
Ted Stewart
United States District Judge